908 P.2d 1379

STATE of New Mexico, Plaintiff–
Respondent,

v.

Donald Morris ROWELL, a/k/a Jimmie
Carrol Rowell, Defendant–
Petitioner.

No. 22821.

Supreme Court of New Mexico.

Dec. 6, 1995.

Tom Udall, Attorney General and Richard J. Klein, Assistant Attorney General, Santa Fe, for Respondent.

Sammy J. Quintana, Chief Public Defender and Christopher Bulman, Assistant Appellate Defender, Albuquerque, for Petitioner.

## OPINION

RANSOM, Justice.

1. Donald Morris Rowell was convicted on one count of computer access with intent to defraud over $250 under NMSA 1978, Section 30–45–3(C) (Repl.Pamp.1989), and one count of attempt to commit fraud over $250 under NMSA 1978, Section 30–16–6 (Repl.Pamp.1994) & –28–1(C) (Repl. Pamp.1994). The computer-fraud conviction carries a basic sentence of eighteen months. NMSA 1978, § 31–18–15(A)(6) (Repl. Pamp.1994). Attempted fraud, a misdemeanor, carries less than one year. NMSA 1978, § 31–19–1(A) (Repl.Pamp.1994). Rowell admitted to having been convicted of four prior felonies and conceded to habitual offender status. *See* NMSA 1978, § 31–18–17 (Repl.Pamp.1994). As a habitual offender, Rowell was subject to a mandatory eight-year increase in his basic sentence for computer fraud, a fourth degree felony. Section 31–18–17(D). He was sentenced to nine and one-half years imprisonment on the computer-fraud conviction, with the basic one and one-half years suspended, and to a 364–day suspended sentence on the attempted-fraud conviction.

2. Rowell appealed and the Court of Appeals affirmed his conviction on computer fraud. *State v. Rowell,* 119 N.M. 710, 717, 895 P.2d 232, 239 (Ct.App.1995). The Court of Appeals vacated Rowell's misdemeanor conviction for attempt, holding that Rowell could not be convicted of committing both a completed offense and an attempted offense based on the same set of facts. *Id.* at 721, 895 P.2d at 243. We granted Rowell's petition for certiorari pursuant to NMSA 1978, Section 34–5–14 (Repl.Pamp.1990) and SCRA 1986, 12–502 (Repl.Pamp.1992). *State v. Rowell,* 119 N.M. 514, 892 P.2d 961 (1995).

3. This case presents two issues: (1) Whether the use of a telephone network that employs computerized switches constitutes the access of a computer under the New Mexico computer-fraud statute; and (2) Whether multiple misdemeanor larcenies committed against multiple victims in different locations and at different times can be a single larceny amounting to a felony? We hold that the use of a telephone network consisting in part of computerized switches to make a long-distance call does not constitute the "accessing" of a "computer" within the meaning of the computer-fraud statute. We further hold that the single-larceny doctrine does not apply to situations involving multiple victims, locations, and time periods. We therefore reverse Rowell's conviction on the charge of computer access with intent to commit fraud over $250, and in light of this opinion remand to the Court of Appeals for reconsideration of its ruling on the attempted-fraud conviction.

4. *Facts.* A man identifying himself as Jim Odem telephoned Toni Gray of Carlsbad on September 18, 1992, explaining that he was an attorney from Las Vegas, Nevada, and that Gray was entitled to a $1000 award from a class action against fraudulent telemarketers in Nevada. Gray was instructed to wire $100 to Florida for court costs, but Gray did not wire the money. She instead contacted the Carlsbad Police Department and the Attorney General. Three days later a man identifying himself as Sam Odem telephoned Alan Isbell of Clovis, explaining that he was an attorney from Las Vegas, Nevada, and that Isbell was entitled to a $2200 settlement award from a telemarketing company. Isbell was told to first forward a $220 cash advance for court costs through Western Union to Jason Daniels in St. Petersburg, Florida. Isbell asked Odem to call him again the next day. He then notified the Curry County District Attorney. A recording device was connected to Isbell's phone, and Odem's call on the next day was recorded by the District Attorney's office. Isbell then wired the $220 to Daniels, but he did not receive any money in return. Sam Odem also telephoned Marie Butt of Raton during the same time period, informing her that she was entitled to $1500. To receive the money, however, Butt would have to wire transfer $150 to court referee Sean Jason Daniels in Clearwater, Florida. Butt also became suspicious, refused to wire the money, and informed the Attorney General.

5. Secret Service agents and a local police officer arrested Jason Daniels at a Western Union terminal in Port Richey, Florida, on September 22, 1992. Daniels implicated a taxi driver named William Thurston and a man known as "Jim". Thurston was arrested, and he identified Rowell as "Jim". Rowell and Odem were one and the same person. After his arrest, Rowell consented to the search of several rooms at the Gulf Sands Motel. Law enforcement officials seized several telemarketing materials including a four-page script describing the alleged class action against the Las Vegas telemarketers. Police also seized a telephone bill for services furnished to a fictitious person, two GTE calling cards issued to the same fictitious person, and a telephone contact sheet. At Rowell's trial, Thurston testified that he picked up money transfers from Western Union for Rowell in return for twenty percent of the face amounts. At Rowell's request, Thurston recruited other people to recover funds from Western Union. Daniels was one such recruit, and he was paid a nominal amount from Thurston's twenty percent commission.

6. *Access to a computer.* The long-distance calls made by Rowell were processed by various computerized switches between Florida and New Mexico. The State argued at trial that these switches perform multiple tasks, are controlled by computers, and therefore fall within the statutory definition of a computer or a computer network. Building on this premise, the State argued that Rowell violated Section 30–45–3 when he used the telephone to commit larceny. Rowell disagreed and argued that the switches were excluded from the statutory definition of computers and that the use of a telephone for the purpose of communication with anoth-

er person was not intended by the legislature to constitute the crime of computer fraud.

■ 7. — *The Computer Crimes Act.* Under the New Mexico Computer Crimes Act, NMSA 1978, §§ 30–45–1 to –7 (Repl. Pamp.1989 & Cum.Supp.1995), it is a crime to access a computer with the intent to commit fraud. The district court found, and the Court of Appeals agreed, that the use of a telephone to access the long-distance communications network was accessing a computer for purposes of the Act. *Rowell,* 119 N.M. at 715, 895 P.2d at 237. Under Section 30–45–2:

A. "access" means to program, execute programs on, intercept, instruct, communicate with, store data in, retrieve data from or otherwise make use of any computer resources, including data or programs of a computer, computer system, computer network or database;

B. "computer" includes an electronic, magnetic, optical or other high-speed data processing device or system performing logical, arithmetic or storage functions and includes any property, data storage facility or communications facility directly related to or operating in conjunction with such device or system. The term does not include an automated typewriter or typesetter or a single display machine in and of itself, designed and used solely within itself for word processing, or a portable hand-held calculator, or any other device which might contain components similar to those in computers but in which the components have the sole function of controlling the device for the single purpose for which the device is intended. . . .

■ 8. The main goal of statutory construction is to give effect to the intent of the legislature. *Roth v. Thompson,* 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992). To do this, we look to the "object the legislature

sought to accomplish and the wrong it sought to remedy." *Lopez v. Employment Sec. Div. of N.M. Dep't of Labor,* 111 N.M. 104, 105, 802 P.2d 9, 10 (1990). "The words of a statute . . . should be given their ordinary meaning, absent clear and express legislative intention to the contrary," *Whitely v. New Mexico State Personnel Bd.,* 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993), but "our construction must not render the statute's application absurd, unreasonable, or unjust," *Aztec Well Servicing Co. v. Property & Casualty Ins. Guar. Ass'n,* 115 N.M. 475, 479, 853 P.2d 726, 730 (1993). Interpretation of a statute is an issue of law, not a question of fact. *State v. Romero,* 119 N.M. 195, 197, 889 P.2d 230, 232 (Ct.App.1994), *cert. denied,* 119 N.M. 20, 888 P.2d 466 (1995); *Pan Am. Petroleum Corp. v. El Paso Natural Gas Co.,* 77 N.M. 481, 487, 424 P.2d 397, 401 (1966). We review questions of law de novo. *State v. Ogden,* 118 N.M. 234, 240, 880 P.2d 845, 851, *cert. denied,* —— U.S. ——, 115 S.Ct. 336, 130 L.Ed.2d 294 (1994).

■ 9. It is not clear from the language of the Computer Crimes Act whether the use of the long-distance telephone network to commit larceny does violate the statute. Section 30–45–2(A) states that access includes conduct that "make[s] use of any computer resources." Section 30–45–2(B) specifically provides, however, that the statutory definition of a computer does not include devices that "contain components similar to those in computers" which are designed for controlling the device only "for the single purpose for which the device is intended." The State has noted that the switches in question perform multiple functions, but this fact is not dispositive.[1] We must determine whether the use of these multi-function, computerized switches for the purpose of communication amounts to the access of a computer under the Act or whether such use amounts to access of computer components that merely control a device for the single purpose for which it is intended.

1. The State presented two technology experts who opined that the long-distance telephone network is actually a computer or computer network under the Act. Though these experts may be qualified to explain the computerized compo-

nents in the network, they are not qualified to interpret the statutory meaning of "computer." *See, e.g., First Nat'l Bank v. Sanchez,* 112 N.M. 317, 324, 815 P.2d 613, 620 (1991) ("expert may not testify on the legality of given conduct").

10. — *Case law.* This is an issue of first impression in New Mexico, but a few other jurisdictions have held that particular uses of a telephone may constitute the accessing of a computer. In *Commonwealth v. Gerulis,* 420 Pa.Super. 266, 616 A.2d 686 (1992), *appeal denied,* 535 Pa. 645, 633 A.2d 150 (1993), the court held that accessing a "voice mailbox" was accessing a computer because the mailbox was created by a computer, and messages in the mailbox were stored on computer disks. *Id.* 616 A.2d at 693. In *People v. Johnson,* 148 Misc.2d 103, 560 N.Y.S.2d 238 (N.Y. City Crim.Ct.1990), the court held that the use of a telephone credit card number was not the mere use of a solitary telephone "but rather a telephone inextricably linked to a sophisticated computerized communication system." *Id.* 560 N.Y.S.2d at 241. Finally, in *State v. Riley,* 121 Wash.2d 22, 846 P.2d 1365 (1993), the Washington Supreme Court held that the switch used to process telephone calls was a computer under the Washington statute. *Id.* 846 P.2d at 1373.

11. Although cited by the State, these cases do not support its position. The defendant in *Gerulis* had used a telephone to access computer-generated voice mailboxes. She then entered data into the mailboxes and changed the password for each so that the authorized users could not gain access to them. It was defendant's manipulation of the voice mailbox that violated the Pennsylvania statute, not the mere use of the telephone. *Gerulis,* 616 A.2d at 691–93. Similarly, the defendant in *Johnson* was convicted of unauthorized use of a comput-er. Johnson was charged with illegally accessing the long-distance network with stolen calling-card numbers. In this situation the telephone network—the computers that operate the system—was the "victim" of the crime. *Johnson,* 560 N.Y.S.2d at 241. Finally, the defendant in *Riley* used a computer and modem to enter random six-digit numbers at forty-second intervals into a local telephone company's general access number in an attempt to discover long-distance access codes. The court held that, in accessing the company's long distance switch, Riley had accessed a computer. The court expressly stated, however, that his actions "were not equivalent to placing a telephone call." *Riley,* 846 P.2d at 1373. We conclude that, although these cases are similar to Rowell's and shed some light on the nature of computer crimes, they are not determinative. All three of these cases involved the manipulation of computer technology and abuse of that technology for the defendants' gain. By contrast, the computer network in this case was a passive conduit through which the defendant's criminal activity passed. Thus, instead of supporting the State's position, these cases actually undermine its position.

12. — *Crimes against or through abuse of computers.* We conclude that the Computer Crimes Act was intended by the legislature to deter and punish crimes committed, at least in a manner of speaking, against computers, or through the abuse of computer sophistication.[2] Rowell did not attempt to introduce fraudulent data into a computer,

2. We are encouraged that our interpretation of the Act is correct by the testimony of one of the State's experts and by the original Senate bill upon which the act was based. David Bailey testified as the State's expert on computer systems and computer networks. Bailey assisted the Attorney General in the drafting of the Computer Crimes Act. He testified that the Act was designed to protect sensitive information stored at Los Alamos National Laboratory, Sandia National Laboratories, and White Sands Missile Range. The Computer Crimes Act does not contain a statement of legislative intent, but the Senate bill upon which it was based did contain such a section. Senate Bill 482, Section 2 states the following:

The legislature recognizes a dramatic increase in computer-related crimes involving financial institutions, government programs, government records and other business enterprises through the introduction of fraudulent data into a computer system, the unauthorized use of computer facilities, the alteration or destruction of computerized information or files and the stealing of financial information, data and other assets.

The increasing use of sophisticated computer software and hardware to commit crimes makes the job of detection and prosecution extremely difficult for traditional law enforcement. New law enforcement techniques using new criminal statutes are required immediate-

nor did he attempt to steal information from a computer. He used a telephone which, because of modern technology, used computerized switches to perform the work of a telephone network. Application of the Computer Crimes Act in this situation is similar to its application to persons who drive cars with computer "brains" on their way to committing a larceny. We have noted before that legislation must "be interpreted to accord with common sense and reason." *Lopez,* 111 N.M. at 106, 802 P.2d at 11.

▮▮▮ 13. *—Rule of lenity.* Rowell argues that, even if this Court were to find that his conduct is punishable under the Computer Crimes Act, we should nevertheless vacate his conviction because of the rule of lenity. Under that rule, a criminal statute must be construed in favor of the defendant when "insurmountable ambiguity persists regarding the intended scope of [that] statute." *Ogden,* 118 N.M. at 242, 880 P.2d at 853. The rule is not applicable simply because it is possible to construe a criminal statute more narrowly than urged by the State. *Id.* Lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *State v. Edmondson,* 112 N.M. 654, 658, 818 P.2d 855, 859 (Ct.App.), *cert. quashed,* 112 N.M. 641, 818 P.2d 419 (1991) (quoting *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980))). Here, if it were not for the resolution of any ambiguity in our interpretation of the Computer Crimes Act, we would agree with Rowell that the rule of lenity would favor reversal of his conviction for accessing a computer.

14. *—Rowell did not access a computer under the Act.* In conclusion, Rowell did not access a computer under the Computer Crimes Act. His use of the long-distance telephone network may have resulted in the access of computerized switches, and in fact access to a computer or a computer network, but access of such components is not the type of conduct the legislature sought to punish by the Act. The computerized components perform the sole function of controlling the switches for the purpose of processing telephone calls. Rowell did not attempt to "program, execute programs on, intercept, instruct, communicate with, store data in, retrieve data from" or otherwise misuse these switches. The switches were designed for a single purpose, and here they were used only for that purpose. Rowell's use of these computerized switches to place a telephone call, without more, simply is not punishable under the Computer Crimes Act. *Cf. Gerulis,* 616 A.2d at 693 (finding that the exploitation of computer "voice mailbox" was a computer crime); *Johnson,* 560 N.Y.S.2d at 242 (holding that using stolen calling card numbers was a computer crime); *Riley,* 846 P.2d at 1373 (holding that the manipulation of a computerized system was a computer crime). Therefore, we reverse the Court of Appeals on this issue.

▮▮▮ 15. *The single-larceny doctrine.* Rowell was convicted of computer access with intent to commit fraud over $250, despite the fact that each of the three attempts involved less than $250. The State argued below that Rowell's conduct was part of one fraudulent scheme and that it was proper to aggregate the three amounts. The single-larceny doctrine states that "[w]hen several articles of property are stolen by the defendant from the same owner at the same time and at the same place, only one larceny is committed." 3 Charles E. Torcia, *Wharton's Criminal Law* § 358 (14th ed. 1980). In *State v. Allen,* 59 N.M. 139, 141, 280 P.2d

ly to cope with the constantly changing nature of computer crime.

The legislature acknowledges the pervasiveness of computers in modern society and the need to punish and to deter antisocial behavior through the misuse or abuse of this technology.

S. 482, 39th Leg., 1st Sess. § 2, 1989 N.M. Senate Bills. Bailey's testimony that the Act was designed to protect sensitive information is consistent with Section 2. While neither Bailey's testimony nor the abandoned provision of the Act are controlling in this matter, both are consistent with our interpretation of the Act.

298, 299 (1955), we held that if there was a single criminal intent, this doctrine would apply to a series of takings from a single owner. In *State v. Klasner*, 19 N.M. 474, 478, 145 P. 679, 680 (1914), this Court held that the taking of property from one location and at one time when such property belonged to several individuals separately could be punished only as a single crime. We noted that the "particular ownership ... of the money stolen, did not give character to the act of stealing it, but was merely a part of the description of the particular crime charged to have been committed." *Id.* at 477, 145 P. at 680 (quoting *Furnace v. State*, 153 Ind. 93, 54 N.E. 441, 441–42 (1899)). While the rationale of the single-larceny doctrine would apply whenever the conduct underlying the charge is done with a "single and continuing impulse or intent, or ... pursuant to a larcenous scheme or plan," 3 Torcia § 358, the State is here asking us to extend the doctrine for the first time to situations where the single larcenous scheme involves multiple victims, locations, and time periods.

16. The "single larceny" allegedly committed here involved three separate individuals, living in three different locations, and occurred over a period of several days. The State claims that Rowell's actions constitute a single crime because Rowell had the same intent in each situation. The State argues that extension of the single-larceny doctrine to this case would make "common sense." We find no case in which the single-larceny doctrine has been applied to a situation like Rowell's. This is an issue of first impression in New Mexico, and an issue that has been addressed by few other courts previously. The courts that have addressed this issue have refused to apply the single-larceny doctrine to crimes involving multiple victims, locations, and time periods.

17. In *State v. Maggard*, 160 Mo. 469, 61 S.W. 184, 184–85 (1901), the Missouri Supreme Court stated that the

> stealing of different articles of property belonging to different persons at different times constitutes different offenses.... [W]here property belongs to different persons, and is located at different places, ... each asportation with intent to steal constitutes a different offense, although the thefts may all have been committed in rapid succession, and in pursuance of a formed design to steal.

Similarly, in *Hall v. State*, 66 So.2d 863, 864 (Fla.1953), *cert. denied*, 346 U.S. 931, 74 S.Ct. 321, 98 L.Ed. 422 (1954), the Florida Supreme Court held that "the taking of articles belonging to different owners at different times or from different places constitute distinct and independent larcenies."

18. More recently, in *People v. Perlstein*, 97 A.D.2d 482, 467 N.Y.S.2d 682, 685 (1983), the New York Supreme Court, Appellate Division, dismissed a count of an indictment that applied the single-larceny doctrine to a larceny committed against multiple victims, at different locations, and at different times.

> Cases have generally required that the aggregated takings be from a single owner or source, or, if from different owners, that the larceny occur at the same time and place, and pursuant to a unitary plan or design, such that the taking may be said to constitute but a single criminal transaction. Since the takings in issue here were not from a single owner or source and did not occur at the same time and place, it follows, *ex necessitate*, that this count of the indictment was improperly constituted and must be dismissed.

*Id.* 467 N.Y.S.2d at 684–85 (citations omitted). In addition to the few courts that have visited this issue, at least one scholar has noted that the single-larceny doctrine has never been extended to this situation.

> When several articles are stolen by the defendant from different owners on different occasions, multiple larcenies are committed. *It matters not that the takings occur on the same expedition, and are committed in rapid succession or in pursuance of a larcenous scheme or plan.*

3 Torcia § 359 (emphasis added and footnotes omitted).

19. The Court of Appeals held that under our decision in *State v. Brooks,* 117 N.M. 751, 877 P.2d 557 (1994), it was not reversible error for the district court to allow the aggregation of the three misdemeanor charges into a single felony charge. *Rowell,* 119 N.M. at 719–20, 895 P.2d at 241–42. In *Brooks* the defendant was convicted of seven counts of embezzlement against one victim. 117 N.M. at 752, 877 P.2d at 558. We held that "it was fundamental error for the trial court not to instruct the jury on the single criminal intent doctrine" in spite of the fact that some of the embezzlements occurred on multiple days. *Id.* at 755, 877 P.2d at 561. We note that the argument to extend the application of *Brooks* to multiple victims is a compelling one, but the State has failed to provide us with case authority, and we have been unable to find any, in which other jurisdictions have extended the single-larceny doctrine in this manner.

20. We also note that after *Brooks* the legislature specifically limited the single-larceny doctrine in embezzlement cases. The legislature amended NMSA 1978, Section 30–16–8 (Repl.Pamp.1994) to state that "[e]ach separate incident of embezzlement or conversion constitutes a separate and distinct of-fence." 1995 N.M. Laws, ch. 131, § 1 (codified as amended at NMSA 1978, § 30–16–8 (Supp.1995)). This amendment evinces the legislature's intent to restrict the single-larceny doctrine. We will not enlarge a doctrine while the legislature works to contract it. We therefore also reverse the Court of Appeals on this issue.

21. *Conclusion.* We reverse the Court of Appeals on the claimed violation of the Computer Crimes Act and on the application of the single-larceny doctrine. The judgment and sentence of the district court is reversed. We remand the case to the Court of Appeals for a reconsideration of the attempted-fraud conviction.

22. **IT IS SO ORDERED.**