2003-NMSC-029

78 P.3d 1226

TRI–STATE GENERATION AND TRANSMISSION ASSOCIATION, INC., Applicant–Appellant,

v.

Sharon Ann KING, et al., Respondents–Appellees.

No. 27,887.

Supreme Court of New Mexico.

Oct. 10, 2003.

Cuddy, Kennedy, Hetherington, Albetta & Ives, L.L.P., Charlotte H. Hetherington, Santa Fe, NM, Rothgerber, Johnson & Lyons, L.L.P., Charles Goldberg, Glen A. Burbridge, Thomas J. Dougherty, II, Denver, CO, for Appellant.

Gallegos Law Firm, J.E. Gallegos, David Sandoval, Santa Fe, NM, for Appellees.

## OPINION

MAES, Chief Justice.

{1} Appellant Tri–State Generation and Transmission Association, Inc. (Tri–State) sought court orders allowing it to enter and survey land owned by Appellees. Tri–State plans to condemn the land, if suitable, in order to build a new electrical transmission line. The district court concluded that the New Mexico Public Regulatory Commission (PRC) has exclusive jurisdiction over Tri–State and therefore dismissed both applications for orders permitting entry onto the premises for lack of subject matter jurisdiction. We hold that the district court has jurisdiction to consider the applications. We also hold that New Mexico statutes grant Tri–State the power to condemn land. We therefore reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

## BACKGROUND

{2} Tri–State is a Colorado-based cooperative association engaged in the wholesale generation, transmission, and distribution of electrical power to its member rural electric cooperatives, which then provide retail service to the public. Tri–State has thirty-two member cooperatives in Colorado, Nebraska, and Wyoming. In February 2000, the PRC approved a merger between Tri–State and Plains Electric Generation and Transmission Cooperative (Plains), a New Mexico-based cooperative with twelve member cooperatives. Tri–State is the surviving entity from the merger. After the merger, Tri–State proposed to construct an electrical transmission line from Walsenburg, Colorado to a

point near Gladstone, New Mexico, in the northeastern section of the state. In preparation for construction of the line, Tri–State sought permission to enter private rangelands along the proposed route in Union and Colfax Counties. Tri–State wants to survey and photograph the land to assess its suitability for the transmission project and investigate the possible environmental impacts associated with the planned construction.

{3} After Appellees refused to authorize Tri–State's entry, Tri–State, in accordance with NMSA 1978, § 42A–1–9 (1981), filed two separate Applications for Orders Permitting Entry to Premises, one in each county. Although filed separately, each case was heard by the same district court judge in the Eighth Judicial District. In each case, Appellees moved to dismiss Tri–State's applications on grounds that the district court lacked subject matter jurisdiction. Appellees also argued that Tri–State had no statutory authority to condemn land. The district court granted the motions in each case, concluding that Tri–State is a public utility and is therefore subject to the exclusive jurisdiction of the PRC. The underlying cases were consolidated for appeal, and we accepted certification from the Court of Appeals.

## DISCUSSION

### Subject Matter Jurisdiction

■ {4} The district court held that the PRC has exclusive jurisdiction over Tri–State's action. Appeals from a lower court's dismissal for lack of subject matter jurisdiction are reviewed de novo. *Gallegos v. Pueblo of Tesuque*, 2002–NMSC–012, ¶ 6, 132 N.M. 207, 46 P.3d 668 ("In reviewing an appeal from an order granting or denying a motion to dismiss for lack of jurisdiction, the determination of whether jurisdiction exists is a question of law which an appellate court reviews de novo."). Appellees now concede that the district court has jurisdiction, and we agree.

■ {5} The PRC is an administrative entity with responsibility for "regulating public utilities, including electric ... and other public service companies in such manner as the legislature shall provide." N.M. Const. art. XI, § 2 (1996). The PRC's authority and jurisdiction are granted by both the New Mexico Constitution and by statute. *See id.; N.M. Elec. Serv. Co. v. N.M. Pub. Serv. Comm'n*, 81 N.M. 683, 684, 472 P.2d 648, 649 (1970). The Legislature granted the PRC regulatory jurisdiction over public utilities through enactment of the Public Utility Act (PUA), which specifies that "[t]he commission shall have general and exclusive power and jurisdiction to regulate and supervise every public utility...." NMSA 1978, § 62–6–4(A) (2000, prior to 2003 amendment). The Legislature initially included rural electric cooperatives within the scope of the Commission's jurisdiction by including cooperatives in the statute's definition of "public utility." NMSA 1978, § 62–3–3(E), (G) (1999, prior to 2003 amendment). A–2000 amendment to the PUA, however, removes some rural electric cooperatives from PRC oversight. *See* § 62–6–4(A). The amendment provides:

Nothing in this section, however, shall be deemed to confer upon the commission power or jurisdiction to regulate or supervise ... the rates, service, securities or class I or class II transactions of a *generation and transmission cooperative* as defined in the Electric Utility Industry Restructuring Act of 1999 [62–3A–1 to 62–3A–23 NMSA 1978].

*Id.* (emphasis added).[1]

{6} In the Electric Utility Industry Restructuring Act (EUIRA), the Legislature distinguished generation and transmission cooperatives from distribution cooperative utilities, which provide service directly to consumers. *See* NMSA 1978, § 62–3A–3(I), (N) (repealed 2003). The Legislature recently repealed the EUIRA, 2003 N.M. Laws ch. 336, § 9, and amended Section 62–6–4 to include a definition of generation and transmission cooperatives, 2003 N.M. Laws ch. 277, § 1. Because these statutes took effect after this action was filed in district court, we do not consider them in our assessment of the district court's jurisdiction. *See* N.M. Const. art. IV, § 34; *cf. Cruz v. Liberty*

---

1. During the 2003 session, the Legislature repealed the sunset provision for the PUA, which was set to take effect July 1, 2003. *See* 2003 N.M. Laws ch. 23, § 1.

*Mut. Ins. Co.,* 119 N.M. 301, 303, 889 P.2d 1223, 1225 (1995). The Act defined a "generation and transmission cooperative" as an entity with "generation or transmission facilities" that "provid[es] sales of electric power to member cooperatives in this state." Section 62–3A–3(N). In contrast, a "distribution cooperative utility" is "a utility with distribution facilities organized as a rural electric cooperative." Section 62–3A–3(I). The parties agree that Tri–State is a generation and transmission cooperative, in that it provides power to its member cooperatives and not to the general public. In Case No. 3673, Tri–State sought approval and authorization from the PRC for its proposed transmission line from Colorado to New Mexico. The PRC acknowledged that Tri–State is a generation and transmission cooperative and concluded, as we do, that it had no jurisdiction over Tri–State's request based on Section 62–6–4. Because the PRC does not have jurisdiction over the matter, the district court, as a court of general jurisdiction, *see* N.M. Const. art. VI, § 13, has authority to consider Tri–State's applications for entry onto Appellees' lands. The district court erred when it concluded that it did not have jurisdiction in this case.

{7} This holding should not be interpreted to mean that the PRC never has jurisdiction over generation and transmission cooperatives. The PRC has limited jurisdiction over generation and transmission cooperatives' rates, Section 62–6–4(D), and the location of new plants and transmission lines, NMSA 1978, § 62–9–3 (2001). Section 62–9–3 does not apply in this case because the transmission lines proposed by Tri–State are not of the character outlined in Section 62–9–3(B), as the PRC determined in Case No. 3673.

*Tri–State has the Power to Condemn Land*

■ {8} In its orders dismissing Tri–State's applications, the district court relied exclusively on jurisdictional grounds. In their motion to dismiss, however, Appellees also argued that Tri–State has no power to condemn land and the district court could have dismissed on this ground, as well. Tri–State would only have the right to enter and survey Appellee's land if it had the power to

condemn land. *See* NMSA 1978, § 42A–1–8 (1981) (authorizing condemnors to enter upon land to conduct suitability studies). The parties addressed this issue in their briefs and arguments before this Court. Because this is a purely legal question that was raised below, we think it is appropriate to resolve this issue for the parties. *See Thomas v. Gardner,* 75 N.M. 371, 374, 404 P.2d 853, 855 (1965) ("[G]enerally, a correct decision will not be disturbed on appeal because it is based on an incorrect ground, especially when the correct ground was formally presented to the court below …. ") (quotation marks and quoted authority omitted); *see also State v. Wilson,* 1998–NMCA–084, ¶ 17, 125 N.M. 390, 962 P.2d 636 ("Appellate courts usually apply the right for any reason basis of affirmance to strictly legal questions."). This issue involves the interpretation of statutes, and therefore our review is de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{9} The Eminent Domain Code provides that the right to exercise the power of eminent domain may be exercised by "condemnors." NMSA 1978, § 42A–1–2 (1981). "Condemnor," in turn, is defined as "a person empowered by law to condemn." Section 42A–1–2(C). The issue in this case is whether Tri–State is an entity empowered by law to condemn. Tri–State argues that its authority to condemn can be found in the Rural Electric Cooperative Act (RECA), which endows rural electric cooperatives with the power of condemnation. The RECA provides that "[a] cooperative shall have the power to … exercise the power of eminent domain in the manner provided by the Eminent Domain Code for the exercise of that power by corporations constructing or operating electric transmission and distribution lines or systems." NMSA 1978, § 62–15–3(L) (1987). If Tri–State is a cooperative under the RECA, then it has the power to condemn land.

{10} The RECA provides that "[c]ooperative nonprofit membership corporations may be organized under the Rural Electric Cooperative Act for the primary purpose of supplying electric power and energy and pro-

moting and extending the use of electricity in rural areas." NMSA 1978, § 62–15–2 (1998). Corporations organized under the RECA are cooperatives under the Act. *Id.* In addition, Section 62–15–2 provides that "for the purposes of [NMSA 1978, §§ 62–15–13 (1979), 14 (1979), –15 (1998) and –19 (1939) ], corporations organized on a nonprofit or cooperative basis under the laws of another state for the primary purpose of supplying electric power or energy are referred to in the Rural Electric Cooperative Act as 'cooperatives.' " *Id.* Tri–State was organized under the laws of Colorado, not under the RECA. Tri–State therefore is a "foreign corporation organized on a nonprofit or cooperative basis under the laws of another state for the primary purpose of supplying electric power or energy." *Id.* As such, it is a cooperative under the RECA "for the purposes of Sections 62–15–13, 62–15–14, 62–15–15 and 62–15–19." *Id.*

{11} Section 62–15–13 (1979) deals with the consolidation of two or more cooperatives, while Section 62–15–14 (1979) deals with mergers between cooperatives. Section 62–15–14 provides that "[a]ny one or more cooperatives … may merge into another cooperative, hereinafter designated the 'surviving cooperative[ ]'." In this case, Tri–State is the surviving cooperative from a merger with Plains. The Act then goes on to provide that "the new or surviving cooperative shall have all the rights, privileges, immunities and powers and shall be subject to all the duties and liabilities of a cooperative organized under the provisions of the Rural Electric Cooperative Act." Section 62–15–15(B). Under Section 62–15–2, Tri–State was a cooperative for the purpose of the merger with Plains. Once Tri–State merged with Plains, it was endowed with all the rights and privileges of a cooperative organized under RECA. Section 62–15–15(B). Those rights and privileges include the right to condemn land for the purpose of "constructing or operating electric transmission and distribution lines or systems." Section 62–15–3(L).[2] We hold that Tri–State is a cooperative under the RECA and has the power to condemn land.

{12} Appellees insist that the Legislature did not intend to extend this power to generation and transmission cooperatives. Although the EUIRA, which drew a distinction between generation and transmission cooperatives and distribution cooperative utilities, NMSA 1978, § 62–3A–3(I), (N), has been repealed, 2003 N.M. Laws ch. 336, § 9, Appellees argue that we should only extend the provisions of the RECA to entities that would have been defined as distribution cooperative utilities under the 1999 version of the EUIRA. They argue that when the RECA was drafted in 1939, there were no entities that resembled generation and transmission cooperatives, only locally run cooperatives that provided energy directly to consumers. In addition, they observe that, if Tri–State were considered a cooperative under the RECA, it would obtain all the benefits provided in that Act even though it is free from oversight by the PRC. The RECA, however, makes no distinctions among types of cooperatives. The Legislature added the applicable part of Section 62–15–2 in 1998. If the Legislature wanted to restrict the rights of a surviving cooperative under Section 62–15–15 to distribution cooperatives it could have done so. Because the Legislature imposed no such restriction, and because Tri–State is a cooperative as that term is defined in the RECA, Tri–State is endowed with the power of condemnation.

**2.** While Section 62–15–15(B) also makes Tri–State subject to the duties and liabilities of the RECA, and, further, rural electric cooperatives are typically regulated by the PRC, *see* NMSA 1978, § 62–3–2 (1985) and NMSA 1978, §§ 62–1–4 (1993), –9–3.2 (2001), this does not affect our decision that the PRC lacks jurisdiction in this case. The Legislature's more recent articulation of the PRC's jurisdiction over generation and transmission cooperatives in Section 62–6–4(A) controls over any contrary aspect of Section 62–15–15(B). *See* NMSA 1978, § 62–15–32 (2003)

("In the event any provision of the Rural Electric Cooperative Act is held to be repugnant to any provision of the Public Utility Act or to a cooperative's inclusion as a public utility thereunder, the latter shall be controlling and the former shall be held repealed to the extent of the repugnancy."); *cf.* NMSA, § 62–15–3.1(D) (2003) ("Nothing in this section grants the public regulation commission the power to regulate a generation and transmission cooperative referred to in Section 62–6–4 . . . .").

## CONCLUSION

{13} The district court has jurisdiction to consider Tri–State's applications for orders to enter Appellees' properties in Colfax and Union Counties. In addition, Tri–State is a cooperative under the RECA and therefore has the power to condemn land in order to build its electric transmission line. On remand, the district court should proceed to consider Tri–State's applications in accordance with Section 42A–1–9.

{14} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA and RICHARD C. BOSSON, Justices.