964 P.2d 834 (1998)
125 N.M. 671
1998-NMCA-095
STATE of New Mexico, Plaintiff-Appellee,
v.
Elouise Pearl FAUBION, and James Faubion, Defendants-Appellants.
No. 18247, 18323.
Court of Appeals of New Mexico.
May 7, 1998.
Certiorari Denied June 26, 1998.
*835 Tom Udall, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Appellee.
Phyllis H. Subin, Chief Public Defender, Shelley A. Scott, Assistant Appellate Defender, Santa Fe, for Appellant-Elouise Faubion.
Robert E. Tangora, Tangora & Whitley, P.C., Santa Fe, for Appellant-James Faubion.

OPINION
ALARID, Judge.
{1} Defendants (collectively Defendants, individually Husband or Wife) appeal their convictions for four counts of felony embezzlement and three counts of misdemeanor embezzlement contrary to NMSA 1978, Section 30-16-8 (1995). Defendants contend that: (1) the trial court erred in failing to instruct the jury on the single criminal intent doctrine (also known as the single larceny doctrine); (2) there was insufficient evidence to support their convictions; and (3) they received ineffective assistance of counsel. We affirm Defendants' convictions.

FACTS
{2} In 1994 Defendants became members of the La Huerta Baptist Church in Carlsbad, New Mexico. In October 1994 Husband was selected to be the church music director, which was an unpaid position. In November *836 1994 Wife was selected to be the church's piano player, for which she was paid $30 per week. Later, in October 1995, Wife was elected church treasurer, which was also an unpaid position. As treasurer, Wife's duties were to keep the church's books, deposit money into the bank account, pay the bills, and prepare financial statements for the monthly business meetings.
{3} In February 1996 Defendants moved from Carlsbad to Oklahoma. After they moved, the church pastor discovered that the water bill had not been paid and the water to the church had been shut off. The pastor and the new church treasurer searched but could not find the church's checkbook. Defendants had kept the church's checkbook when they moved to Oklahoma.
{4} The new treasurer obtained checks and copies of the church's bank statements from the bank. Upon examining the statements, discrepancies were discovered between the actual balance and the balance presented to the church in the monthly financial statements provided by Wife. The December 1995 financial statement showed a balance of $4,134.12, while the bank statement showed a balance of $608.12. The January 1996 financial statement showed a balance of $1796.52, while the bank statement showed a balance of $399.07.
{5} The discrepancy was due to the fact that Wife wrote eight checks to herself and to Husband for approximately $3600.00. She wrote five checks in December 1995 in the amounts of $750.00, $1528.87, $400.00, $200.00, and $150.00, and she wrote three checks in January 1996 in the amounts of $150.00, $300.00, and $200.00. Wife had recorded none of these checks in the church's financial statement and only one of the checks contained an explanation in the memo line.
{6} When the pastor called Defendants in Oklahoma to confront them about the missing money, Wife told him he would have to speak with Husband. When Husband returned the pastor's phone call, he told the pastor that the money had been placed in certificates of deposit for the church. When Defendants were questioned over the phone by a detective, they repeated the same story. In fact, there were no such certificates of deposit purchased for the church. Later, when the police in Carlsbad questioned Defendants, they admitted that there were no certificates of deposit and claimed that the money taken from the church was for past services rendered. Defendants alleged that the church was supposed to pay Husband $50 per week for his work as the music director. They stated that a former pastor of the church had agreed upon this; however, there is no record of such a decision. At trial there was testimony that neither the music director nor the church treasurer was a paid position and that the members of the church had never made such an agreement. Additionally, the church's budget does not reflect any compensation for the music director. Wife also admitted that she knowingly falsified the monthly financial statement prepared for the church to cover up what she had done. Defendants were convicted on seven of the eight counts of embezzlement. Defendants now appeal their convictions.

DISCUSSION

I. Single Criminal Intent
{7} Defendants assert that the trial court committed fundamental error by not instructing the jury that "the state must prove beyond a reasonable doubt that each separate crime charged was the result of a distinct criminal impulse." State v. Brooks, 117 N.M. 751, 756, 877 P.2d 557, 562 (1994). We do not agree. Although Defendants may raise issues of fundamental error for the first time on appeal, the trial court did not commit fundamental error. Id.; see also Rule 12-216(B)(2) NMRA 1998.
{8} Defendants cite Brooks as controlling in this matter. In Brooks the defendant was convicted of seven counts of embezzlement. The trial court did not instruct the jury on single criminal intent. Single criminal intent embodies the principle that a series of takings from one individual may be a single crime. Brooks, 117 N.M. at 752-53, 877 P.2d at 558-59. The key is to focus on the defendant's intent; if there was a single criminal impulse there was only one crime committed. See id. The New Mexico Supreme Court reversed the defendant's convictions *837 because "it was fundamental error for the trial court not to instruct the jury on the single criminal intent doctrine." Id. at 755, 877 P.2d at 561.
{9} Although Brooks was persuasive at the time it was decided, we find that it has been effectively replaced by recent amendments to Section 30-16-8 and by State v. Rowell, 121 N.M. 111, 908 P.2d 1379 (1995). Section 30-16-8 (1987) previously defined embezzlement as "embezzling or converting to his own use of anything of value, with which he has been entrusted, with fraudulent intent to deprive the owner thereof." When the legislature amended Section 30-16-8 in 1995, it added the following language to the definition of embezzlement: "Each separate incident of embezzlement or conversion constitutes a separate and distinct offense." This additional language removed the need for a jury instruction on single criminal intent as each act is automatically a distinct offense. We will not question the legislature's decision to modify the embezzlement statute. Bray v. United States, 1 N.M. 1, 2 (1852) (the definition of criminal offenses is entrusted to the legislature).
{10} In 1995 the Supreme Court addressed this change in the embezzlement statute in Rowell. In that case the defendant had committed computer fraud against several victims. The State sought to aggregate the amount of each criminal act to charge the defendant with computer access with intent to commit fraud over $250. Rowell, 121 N.M. at 113, 116, 908 P.2d at 1381, 1384. The Court found that the single criminal intent doctrine applies to situations where the defendant has stolen several items of property from a single owner at the same time, but that it does not apply when there are multiple takings and victims. Id. at 117, 908 P.2d at 1385.
{11} Although the facts of Rowell are distinct from Brooks and from the case here, it is significant that the Court noted that after Brooks the legislature limited the single criminal intent doctrine in embezzlement cases. Rowell, 121 N.M. at 118, 908 P.2d at 1386. The Court determined that the legislature intended to restrict the single criminal intent doctrine and chose not to enlarge the doctrine in the face of this legislative intent. Relying upon Rowell, we also hold that the single criminal intent doctrine no longer applies in embezzlement cases, and therefore, the trial court did not commit fundamental error when it instructed the jury.

II. Sufficiency of the Evidence
{12} When reviewing a claim of the sufficiency of the evidence, we must view the evidence in the light most favorable to the state and resolve conflicts and indulge all inferences to support the verdict. State v. Sanders, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). To determine the sufficiency of the evidence, we must decide "`whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction.'" State v. Garcia, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (quoting State v. Sutphin, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988)).
{13} Defendants argue that there was insufficient evidence of their criminal intent. They assert that in order to support a conviction of embezzlement there must be proof that they embezzled the money with the fraudulent intent to deprive the owner of that money. This assertion is correct. However, we do not agree that there was insufficient evidence of Defendants' fraudulent intent. Although Defendants argue that they did not intend to deprive the church of its money, as noted below, we believe it was reasonable for a jury to determine from the evidence that there was evidence to the contrary. Defendants also admitted that they submitted false financial statements to the church, took the church's checkbook with them to Oklahoma, and lied to both the pastor and the police about what they had done with the money. These lies and misleading actions evidence their consciousness of guilt. See State v. Ruiz, 119 N.M. 515, 518, 892 P.2d 962, 965 (Ct.App.1995). From Defendants' actions, the jury could reasonably conclude that they had the requisite criminal intent to embezzle money from the church. Therefore, we find that there is sufficient evidence in the record to support the Defendants' convictions.

*838 III. Ineffective Assistance of Counsel
{14} Defendants have raised several different claims of ineffective assistance of counsel. However, Defendants have the burden of establishing the specific facts of an ineffective assistance of counsel claim. State v. Chamberlain, 112 N.M. 723, 733, 819 P.2d 673, 683 (1991). Defendants have not cited any evidence in the record and have not shown us a prima facie case of ineffective assistance of counsel. Therefore, we will not remand on this issue. See State v. Swavola, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App.1992) ("We thus limit remand to those cases in which the record on appeal establishes a prima facie case of ineffective assistance.").

CONCLUSION
{15} Having found that the single criminal intent doctrine no longer applies to embezzlement, that there is sufficient evidence to support Defendants' convictions, and that there was no evidence in the record of ineffective assistance of counsel, we affirm Defendants' convictions for felony and misdemeanor embezzlement.
{16} IT IS SO ORDERED.
APODACA and BOSSON, JJ., concur.