This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 33,764**

**KENDREA YELLOWHAIR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VANZI, Judge.**

{1}     Defendant Kendrea Yellowhair appeals her conviction for child abuse by endangerment of her child, K.Y., challenging the sufficiency of the evidence offered at trial. In particular, Defendant asserts that the State did not establish that she acted with the reckless disregard necessary to support her conviction. We affirm.

{2}     In reviewing a sufficiency of the evidence claim, the appellate courts must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* The appellate courts do "not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* Further, when assessing the sufficiency of the evidence to support a jury verdict, we analyze the evidence presented in light of the instructions given to the jury defining the offense charged. *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 (noting that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured"). In relevant part, the instructions given at Defendant's trial required the jury to find that:

1. [Defendant] caused [K.Y.] to be placed in a situation which endangered the life or health of [K.Y.]; [and]

2. [D]efendant acted intentionally or with reckless disregard and without justification. To find that [D]efendant acted with reckless disregard, you must find that [D]efendant knew or should have known [D]efendant's conduct created a substantial and foreseeable risk, [D]efendant disregarded that risk and [D]efendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [K.Y.]

{3} During its case in chief, the State presented the testimony of Farmington Police Officer Donovan Stearns who described a traffic stop involving a white minivan. Officer Stearns testified that when he pulled over the minivan, it was being driven by Thyron Begay, who was ultimately arrested for driving while intoxicated. Three other adults and two children were also in the minivan when Office Stearns pulled it over. Defendant was riding in the back seat, with an unsecured car seat holding Begay's infant son to her left and another woman seated to her right. K.Y., who was less than two years old, was standing between Defendant's legs on the floor of the minivan. A fifth passenger, Defendant's brother, was riding in the front passenger's seat.

{4} During the course of the traffic stop, Defendant was asked to identify herself. She gave Officer Stearns a false name, said that Begay was her boyfriend, and also claimed to be the mother of not only K.Y. but also Begay's infant son. At one point in the encounter, Defendant asserted that the baby boy was hungry, pulled up her shirt, and began to simulate breastfeeding him. Defendant's mother then arrived, and the

police allowed Defendant, the other woman who was in the minivan, and both children to leave with her. After the women and children left, Begay tried to explain to the police that Defendant was not the mother of his child. Although they initially did not believe him, the police eventually understood what Begay was saying and recovered his infant son, returned him to his actual mother, and arrested Defendant on charges of concealing her identity, custodial interference, and child abuse by endangerment. At trial, Defendant was acquitted of custodial interference, and in this appeal, she does not challenge her conviction for concealing identity. The only issue before us, therefore, is her conviction for child abuse by endangerment.

{5} In challenging her conviction, Defendant asserts that her motivation for getting into the minivan was to prevent Begay, who she described as being too drunk to "know what he was doing," from driving off with his infant son on board. Thus, she says she acted in a reasonable manner to protect the child and was completely unaware that bringing K.Y. with her was dangerous. In contrast, the State's theory of the case was that Defendant simply got into that minivan with K.Y. intending that they become passengers. Specifically, the State contends that Defendant knew Begay was going to drive off and that she wanted to leave the house before the police arrived because she had an outstanding warrant and did not want to get arrested. It was the jury's role at Defendant's trial to determine which of these theories it believed, and when there is evidence to support the version of events found by a jury, we do not second-guess the

4

findings made. *See State v. Nichols*, 2006-NMCA-017, ¶ 9, 139 N.M. 72, 128 P.3d 500 (noting that "we do not substitute our judgment for that of the fact[]finder concerning the credibility of witnesses or the weight to be given their testimony" (internal quotation marks and citation omitted)). Based on the testimony at trial, we conclude that there was sufficient evidence to support the State's theory of the case.

**{6}** Citing to *State v. Consaul*, 2014-NMSC-030, 332 P.3d 850, Defendant argues that the State did not establish intentional or reckless conduct as would be necessary to support a conviction for child abuse by endangerment. In *Consaul*, our Supreme Court explicitly held that the child abuse statute is "intended to punish acts done with a reckless state of mind consistent with its objective of punishing morally culpable acts and not mere inadvertence." *Id.* ¶ 36. *Consaul* stated that a defendant must "consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe." *Id.* ¶ 37 As such, the Supreme Court expressed concerns about "the continued vitality of 'knew or should have known' " in the jury instruction, given the phrase's "close association with principles of civil negligence and ordinary care." *Id.* ¶¶ 39-40. Following *Consaul*, our Supreme Court issued a revised uniform jury instruction clarifying reckless disregard as the minimum required mens rea for child abuse and removing the phrase "knew or should have known" from the recklessness standard. *See* UJI 14-612 NMRA.

5

{7}     In this appeal, Defendant specifically asserts that the State did not establish that she "(1) realized the risk that her instinctual conduct involved [because] she was unaware that Begay would abruptly drive off with her and K.Y.—virtual strangers—still in the minivan; or, (2) that she purposefully entered the minivan with K.Y. with the intent to become passengers in it." This argument, however, requires that the jury believed Defendant's version of events: that she took K.Y into the minivan for the sole purpose of protecting Begay's child. Clearly, the jury rejected Defendant's explanation. Rather, it accepted the State's assertion that she wanted to get in the minivan to avoid arrest. Further, given that the minivan was ultimately pulled over carrying Begay and five passengers—all of whom presumably boarded at the same time as Defendant—the jury could reasonably have concluded that Defendant intended to get in the minivan and did not believe Defendant's explanation that Begay drove off too abruptly for her to get back out.

{8}     Similarly, Defendant asserts that there was no evidence to establish that she "intentionally or recklessly exposed [K.Y.] to a substantial and foreseeable risk[.]" Defendant's own testimony, however, belies this assertion. She testified that she knew both that Begay was "not able to safely operate a motor vehicle" and that he was about to drive away when she got into the minivan. Thus, there was no question that Begay represented a danger and that Defendant was aware of that danger. It appears that the main question raised by Defendant's version of events is whether her motive to protect

Begay's son justified her decision to place K.Y. within the zone of that danger. Thus, in deciding whether to accept Defendant's version of events, the jury was tasked with determining whether her decision to place K.Y. in danger was justified by the circumstances surrounding that decision. In this case, the jury either did not accept Defendant's explanation of her motives or determined that her concern for another child did not justify the decision she made to take K.Y. into the minivan.

{9}     Because, it is the sole province of the jury to decide what weight is to be given to the evidence, Defendant's arguments on appeal do not lead to a conclusion that the jury made any findings that were unsupported by the evidence. We are not persuaded by her contention that the jury should have accepted her version of events and, therefore, her conviction must be reversed. *See generally State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (noting that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts").

{10}     We also note that the jury had reason to question Defendant's credibility given the fact that she lied to the police during the traffic stop. And, when questioned at trial about her dishonestly, Defendant explained that there was a warrant for her arrest at the time of the stop and that she "had [her] child with [her] and [she] wasn't willing at any cost to lose [her] child for anything." A jury could reasonably infer from such evidence both that Defendant's dishonesty, including pretending to breastfeed Begay's

7

son, was intended to cut short her interaction with the police and that Defendant's actions manifested her own consciousness of guilt. *See State v. Martinez*, 2002-NMCA-043, ¶ 17, 132 N.M. 101, 45 P.3d 41 (noting that a jury may interpret a defendant's dishonesty with law enforcement officers "as evincing a consciousness of guilt"); *State v. Faubion*, 1998-NMCA-095, ¶ 13, 125 N.M. 670, 964 P.2d 834 (describing lies to the police as evidence of consciousness of guilt).

{11}    Ultimately, Defendant contends that her actions were motivated by a desire to protect Begay's son. If accepted as truth, such motivations might have convinced a jury that Defendant's actions were justified. However, insofar as the jury was free to accept or reject the testimony received at trial, Defendant's arguments on appeal provide no basis for this Court to reverse her conviction. We conclude that the evidence offered was sufficient to support the jury's finding that Defendant acted intentionally or with reckless disregard and without justification as necessary to support a conviction for child abuse by endangerment.

**CONCLUSION**

{12}    Defendant's conviction is affirmed.


{13}    **IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Judge**

8

**WE CONCUR:**

_____

**TIMOTHY L. GARCIA, Judge**


_____

**STEPHEN G. FRENCH, Judge**