This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36327

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHARLIE MONTOYA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Charlie Montoya appeals from his convictions for second-degree murder, aggravated assault (deadly weapon), and conspiracy to commit assault with intent to commit a violent felony. On appeal, Defendant claims (1) the district court erred by failing to grant a continuance or declare a mistrial based on the need to secure a defense witness, and (2) the evidence was insufficient to support the convictions. We affirm.

**DISCUSSION**

**I.      Availability of a Witness**

**{2}**      Defendant claims that the district court should have either granted a continuance or declared a mistrial after a defense witness failed to appear by the end of trial. We review the denial of such motions for an abuse of discretion. *See State v. McDonald*, 1998-NMSC-034, ¶ 26, 126 N.M. 44, 966 P.2d 752 (stating that the district court's ruling on a motion for a mistrial is addressed to the sound discretion of the district court and will not be disturbed absent a showing of abuse of discretion); *see also State v. Sanchez*, 1995-NMSC-053, ¶ 17, 120 N.M. 247, 901 P.2d 178 ("The grant or denial of a motion for a continuance rests within the sound discretion of the [district] court, and the burden of establishing an abuse of discretion rests with the defendant.").

**{3}**      In this case, the absent witness, Natalie Oliver, had discovered the body of Ray Gurule (Victim) in her backyard, lying between an exterior wall of the house and a cinder-block fence. The State's theory was that Victim had been fatally shot during a confrontation with Defendant near Oliver's home four days before the body was discovered, but before Victim died he fled and ended up in Oliver's backyard.

**{4}**      Oliver was listed as a witness for both sides. At the June 13, 2016, docket call—approximately a month before the start of trial—defense counsel indicated that he was having trouble with Oliver, who was under subpoena but had stated that she would not be coming to trial. Defense counsel informed the district court that Oliver had done yard work the day before the body was found, suggesting the body was not in the yard at that time. Defense counsel indicated that he could pursue the matter further to see if she would comply with the subpoena; the State indicated that it would not oppose a motion for a material witness warrant in the event that Oliver remained intransigent. The court then stated that the matter was not yet ripe, and the State noted that defense counsel could request a material witness warrant if Oliver did not cooperate by ten days before the trial.

**{5}**      The jury trial began on July 11, 2016. On July 18, 2016, defense counsel informed the court that Oliver still had not appeared. The court authorized a material witness warrant, which defense counsel failed to file until the following day, which was the final day of trial testimony. On the day the warrant was filed, the district court was informed that a police officer believed that there was a technical glitch with the warrant, so he did not produce Oliver. During a recess, the district court told counsel to work on the matter. When testimony closed later that day, Oliver still had not appeared, and Defendant moved for a mistrial. The district court denied the motion.

**{6}**      In considering the denial of a motion for a mistrial, we initially consider whether the district court should have granted a continuance. *See State v. Messier*, 1984-NMCA-085, ¶ 14, 101 N.M. 582, 686 P.2d 272 (stating that "[w]here a reasonable continuance may resolve the problem, it should be undertaken in lieu of granting a mistrial"). While "[t]he grant or denial of a motion for a continuance rests within the

sound discretion of the [district] court," there are a number of factors district courts should consider in evaluating such motions:

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20 (internal quotation marks and citation omitted). Because trial counsel requested a mistrial, and not a continuance, the district court's focus on the last two *Torres* factors and our consideration of them is dispositive in this case.

**{7}** In determining whether a defendant suffered prejudice as a result of the district court's denial of a motion for a continuance, "[w]e do not ask whether the evidence was critical but, instead, whether [the defendant] made a plausible showing of how the witness's testimony would have been both material and favorable to his defense." *Id.* ¶ 12 (alteration, internal quotation marks, and citation omitted). As noted, Defendant sought Oliver's testimony for the purpose of showing that the witness did not see Victim's body when she did yardwork several days after the confrontation involving Defendant, making it unlikely that the confrontation resulted in Victim's death. However, as the district court observed:

> Her testimony would involve finding the body, residing at the property and having cleaned, according to two offers of proof, the front yard of the property on Thanksgiving Day, which was the day before the body was discovered.

> The body was in fact discovered, however, behind a six-foot cinder block wall on the side of the house, not in the front yard, the side of the house which is attached to the backyard. And the probative value of her testimony is highly unknown at this time. She discovered the body; she walked the police to it in the lapel video; and she had cleaned a different yard on the same property the day before.

**{8}** The district court also noted that defense counsel did not request a material witness warrant until "extremely late" in the process. In light of the lack of diligence in securing Oliver's attendance, and more importantly because of the speculative favorability of her testimony, we conclude that the district court acted within its discretion not to prolong the proceedings. *See State v. Salazar*, 2006-NMCA-066, ¶¶ 2-3, 27, 139 N.M. 603, 136 P.3d 1013 (holding that the defendant failed to demonstrate prejudice from being denied a continuance to obtain an evaluation because the prejudice was speculative). It follows that the district court did not abuse its discretion in denying the more severe remedy of a mistrial.

## II.      Sufficiency of the Evidence

**{9}**      Defendant challenges the sufficiency of the evidence to support his convictions. When assessing the sufficiency of the evidence, "we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "We then determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted).

**{10}**      Defendant's brief-in-chief only challenges his second-degree murder conviction. Therefore, we limit our discussion to that conviction. *See State v. Johnson*, 2010-NMSC-016, ¶ 62, 148 N.M. 50, 229 P.3d 523 (concluding that the defendant had abandoned issues "by failing to discuss them in his brief"); *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be").

**{11}**      In order to support Defendant's conviction for second-degree murder, the evidence had to show that Defendant killed Victim, that Defendant knew that his acts created a strong possibility of death or great bodily harm, and that Defendant did not act as a result of sufficient provocation. The jury was also instructed that Defendant could be found guilty as an accessory.

**{12}**       The verdict form returned by the jury did not specify whether its determination of Defendant's guilt was based on principal or accessory liability. Because the verdict may be upheld where one of the theories for conviction is supported by sufficient evidence, *see State v. Bahney*, 2012-NMCA-039, ¶ 26, 274 P.3d 134, we will address the evidence of second-degree murder under the accomplice liability theory.

**{13}**      A person may be "convicted of [a] crime as an accessory if he procures, counsels, [or] aids or abets in its commission[,] although he did not directly commit the crime." NMSA 1978, § 30-1-13 (1972). "A person who aids or abets in the commission of a crime is equally culpable" and faces "the same punishment as a principal." *State v. Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075. The jury was instructed that Defendant may be found guilty of the substantive offense as an accessory, if they find beyond a reasonable doubt that: (1) "[D]efendant intended that the crime be committed"; (2) "the crime was committed"; and (3) "[D]efendant helped, encouraged, or caused the crime to be committed." *See* UJI 14-2822 NMRA. Under an accessory liability theory, "a jury must find a community of purpose for each crime of the principal."

*Carrasco*, 1997-NMSC-047, ¶ 9. As such, "a jury must find that a defendant intended that the acts necessary for each crime be committed[.]" *Id.* (emphasis omitted).

**{14}** Here, Victim's body was found in Oliver's backyard in Albuquerque on November 28, 2014. Four days prior to the body being discovered, Defendant and Adonai Carrasco had been exchanging angry phone calls and texts. The disagreement was over Defendant's two-year old daughter he had with Angelita Roan, who was Carrasco's girlfriend during this time. Defendant and Carrasco agreed to meet up for a fight. Carrasco went to the meet-up with Victim and Roan, and Defendant brought his uncle, Billy Cordova. Defendant brought Cordova along because he believed that Carrasco would not be coming to the confrontation alone.

**{15}** Once they arrived, Carrasco and Victim got out of the car. He and Victim took off, running in different directions. Roan testified that after she, Carrasco, and Victim arrived, she saw Defendant's car approaching. Although Roan equivocated over whether she actually saw Defendant, the prosecutor confronted her with her prior statement where she identified Defendant as being there "for sure." Roan was also confronted with a prior statement where she told police that she heard Cordova yelling at the men when they were running and the gunfire erupted at that time. She also testified that prior to the trial, she and Defendant had a conversation where Defendant in effect told her she should perjure herself and testify that he was not there on the night of the shooting. Defendant admitted in his testimony that he was trying to get Roan to lie about his presence at the scene. Defendant also testified that he called his uncle, Cordova, to go with him to the confrontation because he thought Carrasco was also bringing someone else to fight. Defendant brought a mini baseball bat to the fight. After they had gotten outside of the vehicle, Defendant heard a gunshot that did not come from the direction of Carrasco and Victim, but from behind him. He fled the scene, and four days later Victim's body was discovered by Oliver. Martin Jaramillo, who also lived in the area testified that on the night of the confrontation he heard a gunshot and saw three people fighting outside of his house, with one person on the ground, and the other two then fleeing. The person on the ground stumbled as he tried to get up, but was then able to flee while holding his side. Jaramillo discovered blood in the area where the men had been fighting. The officers also located a small spent casing from a handgun at the scene of the crime.

**{16}** A forensic pathologist testified that Victim had been shot in the head and could have survived for an indeterminate period of time after being shot. Although the pathologist testified that Victim "had been dead for some time" before he was found, he could not be exact because the rate of decomposition depended on the ambient temperature. The pathologist further testified the gunshot wound to the head did not enter the cranial vault, resulting in bleeding between the skull and membrane. Given this, Victim could have been able to move around after the injury, until passing out and dying later. The pathologist determined the cause of death was homicide.

**{17}** Although Defendant argues the evidence did not show that he was the one who fired the gun, the evidence supports a finding by the jury that either he or Cordova fired

the weapon. Given that they shared the purpose of engaging in a violent fight with Carrasco and Victim, it did not matter if it was Cordova who fired the gun. *See State v. Ortega*, 2014-NMSC-017, ¶ 49, 327 P.3d 1076 (holding that, for purposes of aiding and abetting, it did not matter if the defendant or his codefendant fired the weapon). The jury could also consider Defendant's highly agitated state, the fact that he armed himself with a bat, and evidence that the gunshots erupted as soon as the fighting began. While Defendant points to medical testimony that the time of death could not be established with certainty, the expert testimony indicated that Victim could have survived the gunshot wound to his skull for a number of minutes or even hours. This is enough time to reach Oliver's backyard, which was within a block from the confrontation. Finally, Defendant's attempt to get Roan to perjure herself and say that Defendant was not there constituted substantive evidence of a consciousness of guilt. *See State v. Faubion*, 1998-NMCA-095, ¶ 13, 125 N.M. 670, 964 P.2d 834. All of these facts, taken together, are sufficient to support Defendant's second-degree murder conviction under an accomplice liability theory.

**CONCLUSION**

**{18}** For the reasons set forth above, we affirm.

**{19}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, JUDGE**

**JENNIFER L. ATTREP, JUDGE**