This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36229

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LARRY LYSTER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM
Margaret J. Crabb, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Larry Lyster appeals his misdemeanor conviction for violating an order of protection, issued pursuant to the Family Violence Protection Act (FVPA), NMSA 1978, §§ 40-13-1 to -12 (1987, as amended through 2019). Defendant raises four issues on appeal: (1) the underlying order of protection was invalid, (2) there was insufficient evidence to prove he knowingly violated the order of protection, (3) his right

to a speedy trial was violated, and (4) the district court committed error in admitting certain testimony. We affirm.

## BACKGROUND

**{2}** In 2008, Defendant's then-wife, Marena Lyster, petitioned the district court for an order of protection against Defendant. The district court issued the protection order in cause number D-1215-DV-2008-00262 (the original order), which expired by its own terms six months later, on April 23, 2009.

**{3}** Some months after the original order expired, Ms. Lyster petitioned the district court for a new protection order in cause number D-1215-DV-2009-00199. A domestic violence special commissioner conducted a hearing on the petition, at which both Defendant and Ms. Lyster appeared, and found that there was "good cause" to renew and extend the original order. The district court, in August 2009, adopted the special commissioner's recommendation to renew the original order and extend it for an indefinite term. This order (the renewed order) was entered in both D-1215-DV-2008-00262 and D-1215-DV-2009-00199 cause numbers.

**{4}** Several years later, in March 2015, a police officer saw Defendant shortly after midnight on a residential street in Alamogordo and questioned Defendant why he was there. After releasing Defendant, dispatch informed the officer that there was an outstanding protection order involving Defendant and that the protected person, Ms. Lyster, lived on the street where the officer had questioned Defendant. The officer later arrested Defendant, and he was charged with violating an order of protection, contrary to Section 40-13-6. A jury convicted Defendant, and he appealed. We reserve discussion of additional facts, as needed, for our analysis.

## DISCUSSION

### I.    Validity of the Order of Protection

**{5}** Defendant first contends that the State failed to prove an element requisite to his conviction—that is, the validity of the underlying order of protection on the date of the offense.[1] *See* UJI 14-334. Defendant argues that the district court lacked authority under the FVPA to renew and extend the original order because it had expired. From

---

[1]While the wisdom of including the "validity" of the underlying order of protection as an element of a violation of an order of protection is not before this Court, we reserve doubts about its inclusion in the uniform jury instruction. *See* UJI 14-334 NMRA. Of note, the statute criminalizing the violation of an order of protection does not contain any requirement that the order of protection be lawful or valid. *See* § 40-13-6(E); *see also State v. Campos*, 1996-NMSC-043, ¶ 63, 122 N.M. 148, 921 P.2d 1266 ("Jury instructions . . . are controlled by and are a reflection of statutory and common law; they are not binding precedent upon this Court."); *State v. Wilson*, 1994-NMSC-009, ¶ 4, 116 N.M. 793, 867 P.2d 1175 ("The Supreme Court will amend, modify, or abolish uniform jury instructions when such instructions are erroneous."). Moreover, our Supreme Court has stated in the context of criminal contempt that "the validity of the . . . order is a question of law for the court, not one of fact for the jury." *State v. Pothier*, 1986-NMSC-039, ¶ 24, 104 N.M. 363, 721 P.2d 1294.

this, he reasons that the court acted without jurisdiction and, as a result, the renewed order was invalid. Defendant's argument fails. Even if we assume for purposes of our analysis that the district court lacked authority to renew and extend the original order under the FVPA, this does not, as Defendant contends, mean the court acted in the absence of jurisdiction such that the renewed order was void or invalid as a matter of law.[2] We explain.

**{6}** "The universal rule adhered to by the courts is that the judgment or final order of a court having jurisdiction of the subject-matter and the parties, however erroneous, irregular, or informal such judgment or order may be, is valid until reversed or set aside." *Acequia Del Llano v. Acequia De Las Joyas Del Llano Frio*, 1919-NMSC-001, ¶ 9, 25 N.M. 134, 179 P. 235 (citing Black on Judgments, § 190); *see also Valid Judgment*, *Black's Law Dictionary* (11th ed. 2019) (defining "valid judgment" as "[a] judicial act rendered by a court having jurisdiction over the parties and over the subject matter in a proceeding in which the parties have had a reasonable opportunity to be heard"). "The test of the jurisdiction of a court is whether or not it had *power to enter upon the inquiry*; not whether its conclusion in the course of it was right or wrong." *State v. Patten*, 1937-NMSC-034, ¶ 13, 41 N.M. 395, 69 P.2d 931; *see also Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 12, 120 N.M. 133, 899 P.2d 576 ("The only relevant inquiry in determining whether the court has subject matter jurisdiction is to ask whether th[e] kind of claim . . . advance[d] falls within the general scope of authority conferred upon such court by the constitution or statute." (internal quotation marks and citation omitted)). In short, "[e]rrors of law do not invalidate judgments." *In re Field's Estate*, 1936-NMSC-060, ¶ 37, 40 N.M. 423, 60 P.2d 945.

**{7}** Applying these principles here, we conclude that the necessary elements of jurisdiction were present when the district court issued the renewed order. Based on the limited record before us, it appears Ms. Lyster filed a petition for a new order of protection, pursuant to the FVPA, and, after a hearing on the matter at which Defendant was present, the district court renewed and extended the original, expired, order of protection, filing the renewed order in both cases. *See State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 ("The reviewing court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." (alteration, internal quotation marks, and citation omitted)); *Patten*, 1937-NMSC-034, ¶ 15 ("Every presumption not inconsistent with the record is to be indulged in favor of the jurisdiction of courts having unlimited jurisdiction[.]"). The district court thus had personal jurisdiction over Defendant. *See State v. Garcia*, 2005-NMCA-065, ¶ 7, 137 N.M. 583, 113 P.3d 406 (providing that the defense of lack of personal jurisdiction is subject to waiver if not properly asserted and that the defendant submitted to the jurisdiction of the district court when he pled guilty to

---

[2]We ordered the parties to provide supplemental briefing on the applicability of the collateral bar rule to Defendant's first claim of error. With certain exceptions, "[t]he collateral bar rule precludes a restrained party from challenging the merits of an injunction after a finding of contempt." *Best v. Marino*, 2017-NMCA-073, ¶ 18, 404 P.3d 450. Because we resolve Defendant's first claim of error on the grounds set out below, it is unnecessary to determine the applicability of the collateral bar rule to the offense of a violation of an order of protection at this time.

the charges). Further, petitions for domestic abuse protection orders, such as Ms. Lyster's, fall within the general scope of authority conferred upon the district court by the constitution; and the FVPA provides that the district court hears such petitions. *See State ex rel. Foy v. Austin Cap. Mgmt., Ltd.*, 2015-NMSC-025, ¶ 7, 355 P.3d 1 ("The source of a district court's subject matter jurisdiction derives from the New Mexico Constitution. Under Article VI, Section 13 of the New Mexico Constitution, the district court shall have original jurisdiction in all matters and causes not excepted in this constitution[.]" (alteration, emphasis, internal quotation marks, and citation omitted)); *Best*, 2017-NMCA-073, ¶ 21 (providing that "Section 40-13-3(A) confers jurisdiction to the district court in the judicial district in which an alleged victim of domestic abuse lives"); *see also* §§ 40-13-3(A), 40-13-2(C).

{8}     Defendant disputes neither of these points but instead argues that if Ms. Lyster was not "able to prove domestic violence such that a new order could be entered, no order should have issued" and that "an extension can only be had from a currently valid order[.]" However compelling an argument Defendant presents relating to the district court's error in renewing and extending the original order, it is not directed "to whether the court had the power to engage in the decision[-]making process in the first place." *In re Adoption Petition of Webber*, 1993-NMCA-099, ¶ 11, 116 N.M. 47, 859 P.2d 1074. In determining whether a district court acted with jurisdiction, "[w]e are not called upon to say whether the court decided right or not in granting the [order], but whether it became the duty of the court to decide either that it should be granted or denied." *Patten*, 1937-NMSC-034, ¶ 19. "If such was its duty, then [the district court] had jurisdiction, and its decision, be it correct or erroneous, is the law of the case until it shall be reversed upon appeal[.]" *Id.* This statement of law has been reaffirmed even in instances where the district court crafts a remedy in excess of the authority prescribed by law. *See, e.g.*, *State v. Bailey*, 1994-NMCA-107, ¶¶ 4-7, 118 N.M. 466, 882 P.2d 57 (holding, notwithstanding the fact the district court lacked authority to issue an injunction in a criminal proceeding, that the district court's issuance of the injunction was erroneous but not in excess of jurisdiction); *id.* ¶¶ 7-10 (addressing whether the injunction-issuing court had subject matter and personal jurisdiction to act and rejecting the suggestion that judicial error constitutes a third form of jurisdictional defect). Here, the district court was called upon to resolve Ms. Lyster's petition for a new order of protection. Given this, Defendant's claim that the court's erroneous resolution of the petition amounted to a jurisdictional defect is not borne out by long-standing precedent.

{9}     Defendant's citation to several New Mexico and out-of-state cases in support of a contrary result are of no help. The cited New Mexico cases either do not pertain to the question of the district court's jurisdiction or construe statutory provisions or rules that are not applicable here and involve direct appeals from underlying district court orders. Likewise, the out-of-state cases cited in Defendant's primary briefing, involving direct attacks on the extension of expired orders of protection, simply do not speak to the viability of Defendant's jurisdictional claim of error here. Finally, Defendant's citation to *People v. Gonzalez*, 910 P.2d 1366, 1375 (Cal. 1996), in his supplemental brief for the principle that defendants may collaterally attack the validity of an order that is the subject of a contempt conviction compels no different conclusion here. Under *Gonzalez*,

a defendant charged with disobedience of a court order or contempt "may challenge the validity of such order on the ground that it was issued without or in excess of jurisdiction." *Id.* While California courts include within these jurisdictional challenges an order "unconstitutional on its face," *id.* at 1378, Defendant's case here presents no such challenge. *See also In re Berry*, 436 P.2d 273, 281 (Cal. 1968) (in bank) (providing that an "order issued on the basis of [a]n error of law of less than constitutional stature is not issued in excess of jurisdiction").

**{10}**　Because the district court had the duty to resolve Ms. Lyster's petition and personal jurisdiction over Defendant, we cannot say that the court, even if it erred in renewing and extending an expired order of protection, acted without jurisdiction. *See Webber*, 1993-NMCA-099, ¶ 10 ("[A]bsent reversal on appeal, a judgment is valid and conclusive, *even if contrary to statute*, so long as the court had jurisdiction over the parties and power under the [c]onstitution to deal with the subject matter." (internal quotation marks and citation omitted)). Defendant having advanced no other theory why the protection order is invalid, we find his first claim of error without merit.[3]

## II.　Sufficiency of the Evidence

**{11}**　Defendant next contends the State failed to present sufficient evidence to prove that he "knowingly violated the order . . . by being within 100 yards of [Ms. Lyster's] residence[.]" *See* UJI 14-334. Specifically, Defendant argues that there was insufficient evidence to prove that he knew he was within 100 yards of Ms. Lyster's residence on the night of the incident, given that the protection order listed 909 S. Florida Avenue (the address of COPE, a domestic violence shelter) as Ms. Lyster's home address, not 810 Constant, the address that was the basis for his conviction.[4] Defendant's sufficiency challenge is without merit.

**{12}**　In assessing Defendant's challenge, we review "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict," to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citations omitted).

---

[3]We note that our holding is limited, given the specific legal theory and record before us. We take no position on whether a defendant might successfully raise a different challenge to a protection order's validity or whether Defendant might have prevailed had he challenged the renewed order directly on appeal, for instance.

[4]Defendant also argues that "he could not have violated the portion of the order prohibiting him from being within [twenty-five] yards of [Ms. Lyster,] as Ms. Lyster was not in Alamogordo at the time [of the incident]." But Defendant's guilt was not tied to that portion of the protection order—the jury instruction defining the offense did not mention those circumstances. They are thus irrelevant to our analysis. *See State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alteration, internal quotation marks, and citation omitted)).

**{13}** Here, the jury heard various evidence supporting a reasonable inference that Defendant knew Ms. Lyster resided at 810 Constant on the date in question. First, although evidence was presented that the address listed on the protection order was that of a domestic violence shelter, Ms. Lyster testified she was no longer staying at that address but at the 810 Constant residence. Both Defendant and the man Ms. Lyster lived with after her separation from Defendant testified that Defendant had previously dropped off the Lysters' son to see Ms. Lyster at 810 Constant. And Ms. Lyster testified to never having moved from that residence and never having told Defendant's divorce attorney or the Lysters' son she moved. Further, Defendant's reliance on his own testimony to the contrary—that he believed Ms. Lyster had moved away from the 810 Constant residence—"does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{14}** Second, Defendant also testified that he was near the house on Constant at the time of the incident because he was looking for a boat, cars, and other items he co-owned with Ms. Lyster that he thought were at the house. Given Defendant's belief that several items of their marital property were stored at the 810 Constant residence, the jury reasonably could have credited Defendant with the knowledge that Ms. Lyster was then living at the residence.

**{15}** Third, the arresting officer testified that when he initially encountered Defendant near 810 Constant and asked what he was doing there, Defendant claimed he was there to help a friend. This statement, by its apparent falsehood, implies that Defendant knew his presence near 810 Constant was not permitted. *See State v. Martinez*, 2002-NMCA-043, ¶ 17, 132 N.M. 101, 45 P.3d 41 (observing that a jury may interpret a defendant's dishonesty with law enforcement officers "as evincing a consciousness of guilt"); *State v. Faubion*, 1998-NMCA-095, ¶ 13, 125 N.M. 670, 964 P.2d 834 ("[The defendants'] lies and misleading actions [to law enforcement] evidence their consciousness of guilt.").

**{16}** In short, sufficient evidence existed for a reasonable jury to find that Defendant knew Ms. Lyster resided at 810 Constant.[5] *See State v. Ortiz*, 2017-NMCA-006, ¶ 23, 387 P.3d 323 (observing that direct evidence of knowledge is rarely available, and accordingly, knowledge may be proved by circumstantial evidence); *see also Montoya*, 2015-NMSC-010, ¶ 53 ("Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (alteration, internal quotation marks, and citation omitted)). Because Defendant entered into the area within 100 yards of that address, substantial evidence supported the jury's finding that he knowingly violated the protection order.

### III.   Speedy Trial

---

[5] We also reject Defendant's related argument—that his conviction cannot stand since the protection order listed Ms. Lyster's address as 909 S. Florida. Neither the order, nor the jury instructions, prohibited Defendant from being within 100 yards of any particular address, but rather—generically—from being within 100 yards of "[Ms. Lyster's] home" and "[Ms. Lyster's] residence[,]" respectively.

**{17}** Defendant argues the district court erred in denying his motion to dismiss for violation of his right to a speedy trial. "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution."[6] *Spearman*, 2012-NMSC-023, ¶ 16. In determining whether a defendant has been deprived of the right to a speedy trial, we analyze the four factors set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. In analyzing the *Barker* factors, "we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Spearman*, 2012-NMSC-023, ¶ 19 (alterations, internal quotation marks, and citation omitted).

## A.    Length of Delay

**{18}** "The first factor, length of delay, is both the threshold question in the speedy trial analysis and a factor to be weighed with the other three *Barker* factors." *State v. Ochoa*, 2017-NMSC-031, ¶ 12, 406 P.3d 505. We agree with the parties that this was a simple case and that the total length of delay was twenty months—eight months beyond the twelve-month presumptively prejudicial period. *See, e.g., State v. Garza*, 2009-NMSC-038, ¶¶ 2, 23, 146 N.M. 499, 212 P.3d 387 (deeming twelve months in a simple case the threshold at which further inquiry into the *Barker* factors is warranted). And we agree with the State that the eight-month delay weighs more than slightly, but not heavily, in Defendant's favor. *Compare State v. Lujan*, 2015-NMCA-032, ¶ 14, 345 P.3d 1103 (concluding that seven-month delay beyond twelve-month presumptive period "weighs in [the d]efendant's favor at least slightly"), *with State v. Moore*, 2016-NMCA-067, ¶ 11, 378 P.3d 552 (holding that "a delay approximately twice as long as the threshold weighs heavily against the [s]tate").

## B.    Reasons for Delay

**{19}** "Closely related to length of delay is the reason the government assigns to justify the delay[,]" with "different weights [being] assigned to different reasons for the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). Of relevance here, negligent or administrative delay, like overcrowded courts, weighs against the state, but less heavily than intentional delay, and increases in weight as its length increases. *Id.* Further, delay caused by the defense is weighed against the defendant. *Serros*, 2016-NMSC-008, ¶ 29.

**{20}** Defendant caused a three-month delay by requesting a continuance due to a scheduling conflict. The State similarly caused another three-month delay by requesting a continuance due to a scheduling conflict. Our review of the record shows that the

---

[6]Because Defendant does not assert that New Mexico's speedy trial guarantee should be interpreted any differently than the Sixth Amendment's guarantee, and our courts have not done so in the past, we treat both protections as the same here. *State v. Spearman*, 2012-NMSC-023, ¶ 16 n.1, 283 P.3d 272.

remaining fourteen months consisted of delay at the beginning of the case and delay resulting from the district court's resetting of trial dates, in absence of a motion by either party.

**{21}** While three months weigh against Defendant, the parties appear to agree that the remaining seventeen months are attributable to the State as negligent or administrative delay.[7] *See, e.g.*, *Garza*, 2009-NMSC-038, ¶ 29 (characterizing delay caused by congested dockets as administrative delay); *State v. Salazar*, 2018-NMCA-030, ¶ 23, 458 P.3d 485 (characterizing delay caused by the state's motion for continuance as administrative delay). The vast majority of this delay appears to be the result of court overcrowding and, as such, should be weighed against the State, though not heavily. *See State v. Thomas*, 2016-NMSC-024, ¶ 12, 376 P.3d 184 (concluding that much of a twenty-six month delay was administrative and concluding that "[a]lthough this type of delay is characterized as negligent and weighs against the [s]tate, it does not weigh heavily where, as here, there is no evidence of bad-faith intent to cause delay"); *State v. Gallegos*, 2016-NMCA-076, ¶ 34, 387 P.3d 296 (declining to weigh over fourteen months of negligent and administrative delay in a simple case "heavily" against the state).

## C.    Assertion of the Right

**{22}** As for the assertion of the right, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. Upon our review of the record, we agree with the district court that Defendant's two early pro forma requests for speedy trial and his motion to dismiss, filed approximately four months before trial, weigh only slightly in Defendant's favor. *See State v. Barela*, 2019-NMCA-005, ¶ 21, 458 P.3d 501 (weighing this factor slightly in the defendant's favor where he made two pro forma assertions early in the case, one speedy trial motion almost five months after the presumptively prejudicial period had begun, and another such motion at trial), *cert. granted*, 2018-NMCERT-011 (No. S-1-SC-37301, Nov. 5, 2018); *State v. Moreno*, 2010-NMCA-044, ¶ 35, 148 N.M. 253, 233 P.3d 782 (concluding that the assertion factor weighs only slightly in favor of the defendant when he asserted his right once pro forma, and in a motion to dismiss two and one-half months prior to trial).

## D.    Prejudice

**{23}** We turn next to the last *Barker* factor, prejudice to Defendant caused by the delay. *See Garza*, 2009-NMSC-038, ¶ 12 ("The heart of the right to a speedy trial is preventing prejudice to the accused."). "Ordinarily, a defendant bears the burden of proof on this factor by showing 'particularized prejudice' when claiming a speedy trial

---

[7] Although the period from Defendant's arrest to the first trial setting might have consisted of time in which the case was proceeding with customary promptness, and thus considered neutral delay, *see State v. Maddox*, 2008-NMSC-062, ¶ 27, 145 N.M 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48, the State does not argue this point and, regardless, it does not impact our ultimate disposition of Defendant's speedy trial claim.

violation." *Serros*, 2016-NMSC-008, ¶ 86. To determine if Defendant was prejudiced, we consider whether there was (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of the defense. *See Garza*, 2009-NMSC-038, ¶ 12. Defendant's assertion of prejudice concerns only the second category of prejudice—anxiety and concern, if any. "[W]e weigh this factor in the defendant's favor only where . . . the anxiety suffered is undue[,]" *id.* ¶ 35, inquiring whether the emotional trauma suffered by the accused is substantial and has continued for an unacceptably long period, *Salandre v. State*, 1991-NMSC-016, ¶ 32, 111 N.M. 422, 806 P.2d 562, *holding modified by Garza*, 2009-NMSC-038.

**{24}** Defendant testified that the pending charges negatively impacted in general his ability to get his life back on track after completing a felony sentence, and more specifically his ability to visit his son in person at a prison facility in California. The district court determined that the pending charges had only a "de minimus" effect on Defendant's reputation; and, although the district court found the restriction on Defendant's ability to visit his son a "legitimate concern," the court gave it little weight.

**{25}** On appeal, Defendant contends that the district court should have credited his uncontested claim of prejudice.[8] We conclude this contention is without merit. We first note that Defendant cites no support that his specific concern—i.e., his inability to visit his son in person—constituted the type of undue anxiety and concern contemplated by our speedy trial analysis. *See Vigil-Giron*, 2014-NMCA-069, ¶ 60; *see also Garza*, 2009-NMSC-038, ¶ 35 ("[W]e weigh this factor in the defendant's favor only where the . . . anxiety suffered is undue."). Regardless, as noted by the State, "[t]he district court was in the best position to assess the credibility of the witnesses and determine the severity of the hardships and anxiety suffered by Defendant during the additional . . . period after the speedy trial threshold had passed." *State v. Montoya*, 2015-NMCA-056, ¶ 32, 348 P.3d 1057. The district court determined that the hardship suffered by Defendant was not significant. This determination is supported by the record, and, as such, we conclude Defendant has not met his burden in establishing particularized prejudice.

## E.   Balancing the Factors

**{26}** In weighing our speedy trial factors, we recognize no single consideration is dispositive. *See, e.g.*, *Barker*, 407 U.S. at 533 (explaining "they are related factors and must be considered together with such other circumstances as may be relevant"). None of the *Barker* factors weigh heavily in Defendant's favor. And without a showing of particularized prejudice, we agree with the district court's determination that, upon

---

[8]Defendant additionally contends he was prejudiced from his charge having not been brought in magistrate court, where his case would have been subject to the six-month rule. *See* Rule 6-506(B) NMRA. Defendant cites no authority that this contention is relevant to our speedy trial inquiry for a charge originally brought in district court, and we, therefore, assume no such authority exists. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."); *see also State v. Radler*, 2019-NMCA-052, ¶ 16, 448 P.3d 613, 618 (concluding that the speedy trial guidelines, not the six-month magistrate court rule, is the applicable measuring stick for our speedy trial analysis).

balancing the *Barker* factors, Defendant's right to a speedy trial was not violated. *See Garza*, 2009-NMSC-038, ¶ 40 (holding that because "[the d]efendant failed to demonstrate particularized prejudice" and "the other factors do not weigh heavily in [the d]efendant's favor[,]" the defendant's right to a speedy trial was not violated); *State v. Hayes*, 2009-NMCA-008, ¶ 16, 145 N.M. 446, 200 P.3d 99 (holding that even though the first three *Barker* factors weigh against the state, "the absence of prejudice to [the d]efendant fulfills the [s]tate's burden to overcome the presumption of prejudice that arises from the delay in this case").

## IV.     Evidentiary Challenges

**{27}**     Defendant lastly contends that the district court abused its discretion by admitting prejudicial testimony at trial and, as a result, he is entitled to a new trial. Defendant challenges statements made by two State witnesses. Ms. Lyster's neighbor made the first statement. When asked why Ms. Lyster spent time out of town, the neighbor said that Ms. Lyster was scared of Defendant. The court clerk who testified about the protection order made the second statement. During testimony about the address listed on the protection order, an address beginning with the acronym "COPE," the State asked the court clerk what COPE was. She replied that it was a domestic violence shelter. Defense counsel lodged an objection to each statement, which the district court overruled. Defendant now reasons on appeal that the district court erred by admitting the statements because they were not relevant and amounted to inherently prejudicial and inflammatory other bad acts evidence.

**{28}**     We, however, need not resolve whether the district court erred in admitting these statements because, even assuming such error, we conclude it was harmless. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110 ("Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful."). Where, as here, the error is evidentiary, rather than constitutional, we determine whether "there is [a] reasonable probability that the error affected the verdict." *Id.* ¶ 36 (emphasis omitted). When conducting a harmless error analysis, a reviewing court "should evaluate all of the circumstances surrounding the error." *Id.* ¶ 43. "This requires an examination of the error itself, which depending upon the facts of the particular case could include an examination of the source of the error and the emphasis placed upon the error." *Id.* Evidence of the defendant's guilt apart from the error may be relevant. *Id.* So may "the importance of the erroneously admitted evidence in the prosecution's case, as well as whether the error was cumulative or instead introduced new facts." *Id.* (alterations, internal quotation marks, and citation omitted).

**{29}**     What stands out most in this case is that the challenged statements introduced no new fact—that is, they did not give rise to any inference not already in evidence. Specifically, the original order and the renewed order both referenced domestic abuse by Defendant against Ms. Lyster. The original order stated that Defendant committed an act of domestic abuse necessitating it, and the renewed order stated that there was good cause to renew and extend the protection order even without a finding of a new act of abuse. The evidence of Ms. Lyster's stay at a domestic violence shelter when

seeking a protection order and her fear of Defendant is thus largely duplicative of what the jury otherwise had reason to know—that Defendant committed domestic abuse against Ms. Lyster.

**{30}** Notable too is the State's lack of emphasis on the statements at trial. Immediately after the bench conference on the neighbor's statement, the prosecutor elicited testimony on a different subject. And Ms. Lyster's fear of Defendant was not otherwise addressed. Similarly, aside from a brief follow-up question about whether COPE was a commonly used address in protection orders, the subject of Ms. Lyster's stay there was not raised. Finally, as discussed, ample evidence apart from the challenged statements independently tended to establish Defendant's guilt.

**{31}** In sum, given the cumulative nature of the statements, their unimportance in proving Defendant's guilt, and the lack of emphasis placed thereon, we are not persuaded there is a reasonable probability that the challenged statements contributed to Defendant's conviction. *See, e.g.*, *State v. Serna*, 2013-NMSC-033, ¶¶ 23-32, 305 P.3d 936 (concluding "there is no reasonable probability that evidence of [the d]efendant's prior convictions affected [the] verdict and contributed to [the d]efendant's convictions" in light of the substantial evidence of guilt, the lack of emphasis placed on the prior convictions, and the cumulative nature of the prior convictions (internal quotation marks)). The statements' admission, whether error or not, does not call for a new trial.

**CONCLUSION**

**{32}** For the foregoing reasons, we affirm.

**{33}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**